BRASWELL *vs.* SUBER.

1. The wife's consent to an absolute deed, made in 1875, to secure the payment of money, was not necessary to pass the legal title, whether a bond for reconveyance was given by the creditor or not.

2. The debt being unpaid, if it was not due, the defendant should have made that fact appear as matter of defense. The legal title was in the creditor from the execution and delivery of the deed, and a right to enter was consequent upon such title unless negatived by evidence, no bond for titles, nor stipulation between the parties as to the possession, appearing.

Ejectment. Deeds. Title. Before Judge CRISP. Sumter Superior Court. October Term, 1877.

Suber brought ejectment against Braswell for a tract of land in Sumter county. His title rested upon a deed made by the defendant to him on December 4th, 1875. Defendant sought to show that this deed was executed to secure the payment of a debt, admitting at the same time that the debt had not been paid, but insisting that as the defendant's wife had not consented to the making of the conveyance, and as a bond for titles or for a reconveyance on payment of the debt was not given by the creditor, no title passed and no recovery could be had thereon. The court excluded the testimony and defendant excepted.

The jury returned a verdict for the plaintiff. The defendant assigns error upon the above exception.

JOHN R. WORRILL, for plaintiff in error, cited Code, §§1969, 1971, 2690; 8 *Ga.*, 457; 14 *Ib.*, 207; 22 *Ib.*, 1; 55 *Ib.*, 412; Code, §§1954, 3809; 59 *Ib.*, 500.

J. A. ANSLEY; J. N. HUDSON; GUERRY & SON, for defendant, cited 59 *Ga.*, 507; 55 *Ib.*, 650; 57 *Ib.*, 604.

BLECKLEY, Justice.

1. A wife may secure her creditors with her own property, in her own way, without the consent of her husband. And a husband has an equal privilege. He may invite the

co-operation of his wife under the act of 1871, (Code, §1969) if he choses, but he is free to dispense with it, notwithstanding that act, if such is his pleasure. The wife has been much advanced by the general tenor of legislation of late years, in respect to her own property. She has acquired a pretty independent position as to title, control and disposition, but this relates to her property, not to his. The law has not yet raised her to the station of superintendent of her husband's contracts, and probably never will. He is bound to support her and the children which she bears to him, and in order to fulfil this obligation, he ought to have as much freedom in the management of his business affairs with the world as unmarried men are allowed to exercise. In taking a wife a man does not put himself under an overseer. He is not a subordinate in his own family, but the head of it. The law assigns him this position, not for his own advantage alone, but as much for the real good of his wife and children, and somewhat for the general interest of society. A husband left free to lead and govern in his own family is the most useful husband to all who may be concerned in the results of his conduct. That exceptions to this rule may be pointed out, is no objection to, or disproof of the rule itself. Human institutions are all more or less imperfect, and their complete efficiency in practical working cannot be expected in every instance. It is enough if they produce beneficence to the great mass, and in the great majority of cases. A subjugated husband is a less pleasing and less energetic member of society, than one who keeps his true place, yet knows how to temper authority with affection. The law does not discourage conjugal consultations, or free and voluntary co-operation in all transactions which affect, or may affect, the welfare of the family. Perhaps, the true spirit and genius of the law favors nothing more than harmony of will and conduct on the part of husband and wife. But the law does not undertake to secure this delightful harmony by coercion, but leaves it to issue spontaneously from the holy relation of matrimony.

In the conduct of his business, the husband may ask his wife's consent; but if he acts without it, especially in the virtuous and praiseworthy matter of securing or paying an honest debt, the law will excuse him, and let him be bound by what he does alone. If he wants her consent, he must procure it in time, and not wait until he has bound himself without it. For him to become anxious about her advice, not when he makes a conveyance, but when he finds himself unwilling to abide by it as made on his own responsibility some months or years ago, is to turn to her too late. The law permits him to neglect taking her counsel, but does not require him to neglect it. Being a husband, he is the free head of a family, and as such needs no license to bind himself by his contracts—not even the license of his true and lawful wife. See 59 *Ga.*, 507; 60 *Ib.*, 588. In the argument, *Griggs vs. Stripling*, 59 *Ga.*, 500, was cited as intimating that an absolute deed would not carry over the legal title as security for a debt unless a bond for a reconveyance was taken by the debtor from the creditor. In ruling that case, no such doctrine was thought of; nor is any intimation of it to be found in the syllabus or in the opinion. On the contrary, the court regarded the deed as passing the title, and as certainly affording the remedy of ejectment if the creditor had thought proper to use it before reconveying voluntarily by filing a deed in the clerk's office and having it recorded. The question left open at the close of the opinion, was not whether he might have recovered the land if he had not reconveyed, but whether he might not do so even after having reconveyed under a misapprehension of his legal rights. What he undertook to do was to apply the statutory remedy of reconveyance and levy and sale, in a case where he had not made a bond for titles, and this court held that, because he had made no bond, that particular remedy was unavailable. It held, further, that he had not duly pursued even that remedy. But it did not enter into the imagination of the court to conceive that he might not have brought ejectment if he had held on to the

title which the debtor's deed gave him. The case of *Lackey vs. Bostwick*, 54 *Ga.*, 45, was ejectment on an absolute deed made as security for a debt, and a recovery was had and upheld, with no allusion by the court to any bond for titles. There may or may not have been a bond, but none is mentioned. On principle, it would look like an absolute deed standing alone, with no other writing to explain or qualify it, would more certainly rank as a conveyance of the legal title, than would such a deed accompanied with a bond or other written undertaking for a reconveyance. We consider it settled, however, that in either case an absolute deed is to be treated as effective.

2. The debt was unpaid, and if it was not due, or if there was some agreement to hinder the change of possession, this was matter of defense. In trying an action of ejectment, the presumption prevails that the right to possession follows the legal title, where there is no bond for titles or other stipulation importing the contrary. The condition in a bond for titles usually shows when the money agreed to be paid becomes due; and if the obligee is let into possession under the bond, he has a right to retain it until he puts himself in some default. Here the debtor conveyed away his title to secure a debt which he has not paid. If, notwithstanding he has parted with the title, he has not parted with the right of possession, let him show the contract or prove its terms. He did not offer to go this far, nor suggest even that the debt was not past due when the action was brought. We will not reverse the judgment for a refusal of the court to admit evidence of the bare fact that the deed was made as security for a debt.

Judgment affirmed.